# SUPERIOR COURT
# OF THE
# STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: January 30, 2023
Date Decided: February 7, 2023

Sean J. Bellew, Esquire
BELLEW LLC
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808

Kenneth J. Nachbar, Esquire
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 N. Market Street
Wilmington, Delaware 19899

Ralph N. Sianni, Esquire
ANDERSON SLEATER SIANNI LLC
2 Mill Road, Suite 202
Wilmington, Delaware 19806

Robert F. Ruyak, Esquire
LARSON LLP
900 17th Street, NW
Washington, DC 20006

RE:   *GPV I FIZAN and StartVenture@Poland sp. z o.o. ASI SKA v. Surgalign Holdings, Inc., et al.*
      C.A. No. N22C-03-110 PRW CCLD
      Defendants' Motion to Dismiss the Amended Complaint

Dear Counsel:[1]

   This Letter Order resolves Defendants' Motion to Dismiss Plaintiffs'

---

[1]    At the outset, the Court notes Plaintiffs' belated submission of supplemental authority filed on January 30, 2023. *See* Notice of Suppl. Authority ("Notice"), Jan. 30, 2023 (D.I. 43, D.I. 44). This supplemental authority covers three consolidated Court of Chancery decisions, captioned as: *In re P3 Health Grp. Hldgs., LLC*, Consol. C.A. No. 2021-0518-JTL. The first, decided on September 12, 2022, concerns the issue of personal jurisdiction over the manager of a Delaware LLC. *See* Notice at 1. The second, decided on October 14, 2022, concerns the issue of personal jurisdiction over an individual who incorporated a Delaware LLC. *See id.* at 1-2. And the third, decided on October 26, 2022, concerns the evaluation of fraud and fraudulent inducement. *See id.* at 2. These decisions relate to Defendants' 12(b)(2) and 12(b)(6) grounds for dismissal and the Court has reviewed Plaintiffs' submission thereunder. That said, because the Court need not reach those grounds this submission did nothing to alter the Court's analysis or the outcome here.

Amended Complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and, in the alternative, *forum non conveniens* (the "Motion").[2] For the reasons explained below, the Motion is **GRANTED**.

## I. BACKGROUND

### A. THE PARTIES

Plaintiff GPV I FIZAN is a venture capital firm registered in Poland with its principal place of business in Warsaw, Poland.[3] GPV invests in startups and technology companies.[4] Its largest shareholder is PFR Ventures, an agency of the Government of Poland.[5] Plaintiff StartVenture@Poland sp. z o.o. ASI SKA (collectively with GPV, "Plaintiffs") is a company registered in Poland with its principal place of business in Warsaw, Poland.[6]

Defendant Surgalign Holdings, Inc. is a medical technology company focused on spinal technologies and is a Delaware corporation with its principal place of business in Deerfield, Illinois.[7] Defendant Roboticine, Inc. is a holding company for Surgalign stock and is a Delaware corporation with its principal place of business in Tulsa, Oklahoma.[8] Defendant SSAR Investments LLC is a Delaware LLC with its principal place of business in Tulsa, Oklahoma.[9] SSAR is a holding company and

---

[2] *See* Defendants' Motion to Dismiss the Amended Complaint ("Defs.' Mot. to Dismiss"), July 25, 2022 (D.I. 24, D.I. 25).

[3] Amended Complaint ("Am. Compl.") ¶ 13, June 24, 2022 (D.I. 22).

[4] *Id.*

[5] *Id.*

[6] *Id.* ¶ 14.

[7] *Id.* ¶ 15.

[8] *Id.* ¶ 16.

[9] *Id.* ¶ 17.

"owns the majority of" Roboticine shares.[10] Defendant Neva LLC is a Delaware LLC with its principal place of business in Tulsa, Oklahoma.[11] Neva is a holding company and "owns 100% of SSAR."[12]

Defendant Krzysztof Siemionow is a Polish citizen who resides in Chicago, Illinois.[13] Dr. Siemionow is the Chief Medical Officer of Surgalign, the Chief Executive Officer of Roboticine, and a former member of Holo Surgical, S.A.'s ("Holo SA" and defined further below) management board.[14] Defendant Cristian Luciano is an Argentinian citizen residing in Chicago, Illinois.[15] Mr. Luciano is the Vice President of Research and Development and Digital Surgery for Surgalign.[16] He also is a former member of Holo SA's management board.[17] Defendant Pawel Lewicki (collectively with Dr. Siemionow and Mr. Luciano, the "Individual Defendants" and with all others, "Defendants") is a Polish citizen residing in Tulsa, Oklahoma.[18] Mr. Lewicki is an independent director of Surgalign, the President and a director of Roboticine, a member of Holo SA's supervisory board, and owner of "100% of Neva."[19]

---

[10]   *Id.*

[11]   *Id.* ¶ 18.

[12]   *Id.*

[13]   *Id.* ¶ 19.

[14]   *Id.* ¶¶ 1, 19.

[15]   *Id.* ¶ 20.

[16]   *Id.*

[17]   *Id.*

[18]   *Id.* ¶ 21.

[19]   *Id.*

## B. THE ALLEGED WRONGFUL SCHEME

In August 2015, Plaintiffs and Defendant Dr. Siemionow and Defendant Mr. Luciano entered into an investment agreement to establish Holo SA.[20] Holo SA is a Polish company that owned intellectual property, including a United States patent that relates to a surgical navigation system and provides a method for augmented reality imaging during surgeries.[21] Plaintiffs' initial investment was $850,000 for a 31.14% interest in Holo SA.[22] In March 2017, Holo SA conducted two capital raises, whereby Defendant Mr. Lewicki through SSAR invested $2 million in Holo SA (the "2017 Investment Agreement").[23] As a result, Plaintiffs then collectively owned 29.26% of Holo SA.[24]

In 2016, in expectation of a future sale of Holo SA to a United States buyer, Holo SA established Holo Surgical, Inc. ("Holo Inc."), "a wholly-owned Delaware subsidiary to hold all of Holo SA's intellectual property rights and assets."[25] Defendant Dr. Siemionow served as President of Holo Inc.[26] On May 9, 2017, Holo SA transferred all of its intellectual property rights and assets to Holo Inc.[27]

In November and December 2017, Plaintiffs and the Individual Defendants

---

[20] *Id.* ¶ 29.

[21] *See id.* ¶¶ 41, 46.

[22] *Id.* ¶ 31.

[23] *Id.* ¶ 32, Ex. G.

[24] *See id.* ¶ 32. Plaintiffs originally owned 34.14% of Holo SA, but Holo SA subsequently conducted two capital raises that decreased Plaintiffs' ownership interest to 29.26%. *See id.*

[25] Plaintiffs' Answering Brief ("Answering Br.") at 3, Aug. 25, 2022 (D.I. 28); *see also* Am. Compl. ¶ 35.

[26] *See* Am. Compl. ¶ 35.

[27] *See id.*

discussed amendments to the 2017 Investment Agreement to permit Holo SA to have more control over the intellectual property assets then owned by Holo Inc.[28]  Those amendments never were executed.[29]

On April 5, 2019, one or more Individual Defendants incorporated Roboticine in Delaware.[30]  From August 2019 to January 2020, the Individual Defendants recurrently warned Plaintiffs that Holo SA's financial situation was rapidly deteriorating, but the Individual Defendants didn't provide the financials to Plaintiffs to support those warnings.[31]  The Individual Defendants represented they engaged in efforts to secure an investor or buyer to save Holo SA but couldn't find one.[32]

On January 8, 2020, Plaintiffs learned the Individual Defendants issued new shares of Holo Inc. and sold those shares to Roboticine.[33]  Plaintiffs allege this transaction occurred at some unknown time before January 8, 2020.[34]  From this transaction, Roboticine owned a 90.5% interest in Holo Inc.[35]  Roboticine's investment in Holo Inc. reduced Holo SA's interest in Holo Inc. from 100% to 9.5% and thereby reduced Plaintiffs' interest in the intellectual property held by Holo Inc. from 29.26% to 2.8%.[36]

After Plaintiffs discovered the Roboticine transaction, they became

---

[28]  *See id.* ¶ 36.

[29]  *See id.* ¶ 40.

[30]  *Id.* ¶ 42.

[31]  *Id.* ¶ 45.

[32]  *Id.* ¶ 46.

[33]  *Id.* ¶ 49.

[34]  *Id.*

[35]  *Id.*

[36]  Answering Br. at 5 (citing Am. Compl. ¶¶ 44, 49).

"increasingly concerned about the value of their investments" and "hired legal counsel to negotiate a possible sale of their minority rights."[37]  From March 2020 through June 2020, Plaintiffs and the Individual Defendants negotiated the sale of Plaintiffs' Holo SA shares.[38]  On June 26, 2020, Plaintiffs sold their remaining 29.26% interest in Holo SA to Roboticine for $1.8 million (the "Share Purchase Agreement").[39]

After Roboticine acquired Plaintiffs' shares in Holo SA, the Individual Defendants reorganized the relationships between Holo SA, Holo Inc., and Roboticine.[40]  The result was: (1) Roboticine acquired Holo SA's remaining shares in Holo Inc., and (2) Defendants Dr. Siemionow and Mr. Luciano became shareholders of Roboticine.[41]  As a result, the Individual Defendants collectively owned 100% of Roboticine, which owned 100% of Holo Inc., which held all of Holo SA's intellectual property.[42]

On September 29, 2020, the Individual Defendants, through Roboticine, sold all of Roboticine's interest in Holo Inc. to Surgalign for  approximately $125 million (the "Stock Purchase Agreement").[43]  The itemized purchase price consisted of: (1)

---

[37]   Am. Compl. ¶ 58.

[38]   *Id.* ¶ 60.

[39]   *Id.* ¶ 63, Ex. R.  Exhibit R is originally written in Polish.  *See id.* ¶ 63 n.8.  An English translation is provided as Exhibit 2 of the Unsworn Declaration of Krzysztof Siemionow.  *See* Mot. to Dismiss, Ex. 2.  Plaintiffs reserve "all rights regarding any potential translation issues" relating to Defendants' translation.  *See* Am. Compl. ¶ 63 n.8.

[40]   Am. Compl. ¶ 64.

[41]   *Id.*

[42]   *Id.*

[43]   *Id.* ¶ 65. The Stock Purchase Agreement is attached to the Amended Complaint as Exhibit A. *See id.*, Ex. A.

a cash payment of $30 million; (2) 6,250,000 shares of Surgalign's stock with a total value of approximately $12 million; and (3) potential earn-out payments totaling $83 million.[44]   The transaction closed on October 23, 2020.[45]   Surgalign appointed Defendant Dr. Siemionow as Chief Medical Officer, Defendant Mr. Lewicki as a non-executive director, and Defendant Mr. Luciano as Vice President of Research and Development and Digital Surgery.[46]  Plaintiffs believe Surgalign colluded with other Defendants to keep Plaintiffs in the dark with respect to this transaction.[47]

## C. RELEVANT CONTRACTUAL LANGUAGE

The Share Purchase Agreement[48] is relevant to the current Motion.  So an examination of the contractual language is necessary.   Section 2.12.1(i), titled "Waiver for Claims by the Parties," states:

> The Sellers [*i.e.*, Plaintiffs] hereby declare that, under the condition subsequent triggered by the Buyer's [*i.e.*, Roboticine] failure to pay the entire Sale Price within the time limits specified . . . [the Sellers]: (i) unconditionally and fully waive (release from debt) and will not pursue any claims from [Roboticine], [Individual Defendants], [Holo SA], their affiliates, employees, advisers or members of corporate bodies of [Roboticine] that exist on the date of concluding this Agreement or that may arise in the future, whether of the nature of contractual, in particular those resulting from the Investment Agreement of August 28, 2015, the Investment Agreement of March 14, 2017, the Article of Association in the wording in force on a given date, as well as non-contractual, with the exception of claims directly arising from this

---

[44]   *Id.* ¶ 65, Ex. S.

[45]   *Id.* ¶ 65.

[46]   *See id.* ¶¶ 9, 20-21, 56, 81.

[47]   *See id.* ¶ 66.

[48]   The Share Purchase Agreement is attached as Exhibit R to the Amended Complaint, *see id.*, Ex. R, and as Exhibit 2 to the Motion.  *See* Mot. to Dismiss, Ex. 2.

Agreement.[49]

There is no dispute the sale price was paid to Plaintiffs.[50]

Additionally, the "Waiver of Claims by the Parties" section states that the Plaintiffs:

> [U]ndertake to refrain from any action in fact or in law that could lead to damage to the property of [Roboticine], [Individual Defendants], [Holo SA], their affiliates, employees, advisers or members of [Roboticine's] corporate bodies, and not to initiate any proceedings before courts or authorities against or with participation of [Roboticine], [Individual Defendants], [Holo SA], their related entities, employees, advisers or members of [Roboticine's] corporate bodies, the result of which could have a direct and significant negative effect on the other Parties or their related entities . . . , with the exception of pursuing claims directly arising from this Agreement.[51]

The Share Purchase Agreement contains a "Governing Law and Jurisdiction" section, which provides:

> This Agreement is subject to the provisions of Polish law and should be interpreted in accordance with them. Any disputes arising out of or in connection with this Agreement shall be finally settled by the Arbitral Tribunal operating at the Lewiatan Court of Arbitration in Warsaw in accordance with the provisions of the Rules of this Court, in force on the date of initiation of the proceedings.[52]

---

[49] Am. Compl., Ex. R § 2.12.1(i); *see also id.*, Ex. R. at 1 (defining the parties to the Share Purchase Agreement).

[50] *See id.* ¶ 65; Defs.' Mot. to Dismiss at 44.

[51] Am. Compl., Ex. R § 2.12.1(ii).

[52] *Id.*, Ex. R. § 7.10.

### D. PROCEDURAL HISTORY

In March 2022, Plaintiffs filed their original complaint in this action.[53] Defendants filed their first Motion to Dismiss shortly thereafter.[54] In June 2022, Plaintiffs amended their complaint, mooting Defendants' first motion to dismiss.[55] The Amended Complaint asserts five causes of action: (1) common law fraud against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for the allegedly false statements made to "deceive" Plaintiffs with respect to the sale of Holo Inc. stock to Roboticine, Roboticine's purchase of Plaintiffs' interests in Holo SA, and the closing of the sale of Holo SA to Surgalign; (2) constructive fraud against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for, *inter alia*, the statements made to allegedly cause Plaintiffs to sell their Holo SA shares to Roboticine; (3) fraudulent inducement against the Individual Defendants and aiding and abetting such fraud as to all other Defendants for the allegedly material misrepresentations of fact as it relates to the transactions at issue; (4) conspiracy to defraud against all Defendants for allegedly engaging in a scheme to "defraud Plaintiffs of the true value of their investments"; and (5) unjust enrichment, unlawful taking, and conversion.[56]

Defendants filed their current motion, seeking to dismiss the Amended Complaint under Civil Rules 12(b)(2), 12(b)(3), 12(b)(6), and, in the alternative, *forum non conveniens*.[57] The Court heard argument on the Motion and took it under

---

[53] *See* Complaint, Mar. 14, 2022 (D.I. 1).

[54] *See* Defendants' First Motion to Dismiss, May 27, 2022 (D.I. 15).

[55] *See* Am. Compl.

[56] *See id.* ¶¶ 83-135.

[57] *See* Defs.' Mot. to Dismiss.

advisement.[58]  This Letter Order disposes of the Motion and the case.

## II. APPLICABLE LEGAL STANDARDS

### A. DISMISSAL FOR IMPROPER VENUE

Delaware Superior Court Civil Rule 12(b)(3) governs a motion to dismiss for improper venue.[59]  The Court "must assume as true all the facts pled in the complaint and view those facts and all reasonable inferences drawn from them in the light most favorable to the plaintiff."[60]  The Court "is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[61]  A motion to dismiss may be granted "before the commencement of discovery on the basis of affidavits and documentary evidence if the plaintiff cannot make out a *prima facie* case in support of its position."[62]

Additionally, when the Court considers a motion to dismiss for improper venue, it must "give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation."[63] "If a forum selection clause validly limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for the plaintiff to sue."[64]

---

[58]  *See* Judicial Action Form, Oct. 10, 2022 (D.I. 34).

[59]  *See* Del. Super. Ct. Civ. R. 12(b)(3).

[60]  *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Ct. Mar. 31, 2009) (citation omitted).

[61]  *Id.* (citation omitted).

[62]  *Id.* (citation omitted).

[63]  *Id.* at *3 (citation omitted).

[64]  *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *6 (Del. Ch. Oct. 19, 2000).

## III. PARTIES' CONTENTIONS

### A. DEFENDANTS' CONTENTIONS

Defendants contend the Amended Complaint should be dismissed against the Individual Defendants for lack of personal jurisdiction. Namely, Defendants argue the Court does not have personal jurisdiction over the Individual Defendants under 10 *Del. C.* § 3114—Delaware's Corporate Director and Officer Consent Statute— because the Individual Defendants aren't "necessary or proper parties" nor does the Amended Complaint allege any "violation of a duty in such capacity."[65] Defendants also say the Court does not have personal jurisdiction over the Individual Defendants under 10 *Del. C.* § 3104—Delaware's Long-Arm Statute.[66]

Next, Defendants insist that dismissal under 12(b)(3) is appropriate because Plaintiffs, the Individual Defendants, Roboticine, and SSAR are subject to exclusive jurisdiction in Poland.[67] Finally, Defendants suggest dismissal under 12(b)(6) is appropriate because Plaintiffs fail to sufficiently plead a claim as to any count.[68] Defendants contend, in the alternative, the Amended Complaint should be dismissed for *forum non conveniens*.[69]

### B. PLAINTIFFS' CONTENTIONS

Plaintiffs maintain they have sufficiently alleged personal jurisdiction over all Defendants to satisfy Rule 12(b)(2). Namely, they argue personal jurisdiction exists for Defendants Mr. Lewicki and Dr. Siemionow under Delaware's Corporate

---

[65] *See* Defs.' Mot. to Dismiss at 16.

[66] *See id.* at 19.

[67] *See id.* at 31.

[68] *See id.* at 33-46.

[69] *See id.* at 46-51.

Director and Officer Consent Statute because they are officers and directors of Roboticine and are "necessary or proper" to this action.[70] Plaintiffs further say personal jurisdiction exists for Defendant Mr. Lewicki under the Long-Arm Statute because he caused Roboticine to be incorporated in Delaware, and personal jurisdiction exists over all Individual Defendants under the conspiracy theory doctrine of personal jurisdiction.[71]

Next, Plaintiffs insist that neither Rule 12(b)(3) nor *forum non conveniens* require dismissal because the Share Purchase Agreement's arbitration clause does not mandate dismissal under Rule 12(b)(3) and Defendants cannot demonstrate the "overwhelming hardship" necessary to succeed on *forum non conveniens*.[72] Finally, Plaintiffs assert that the Amended Complaint adequately pleads a claim for each of their five counts.[73]

## IV. DISCUSSION

Because dismissal under Rule 12(b)(3) is appropriate here, the Court need address only the improper venue arguments.

### A. IMPROPER VENUE

To reiterate, under Rule 12(b)(3), on a motion to dismiss for improper venue, "the Court is not shackled to the non-moving party's complaint and is permitted to consider extrinsic evidence."[74] And again, in the 12(b)(3) context, "the Court should

---

[70] *See* Answering Br. at 16-19.

[71] *See id.* at 19-27.

[72] *See id.* at 28-39.

[73] *See id.* at 39-51.

[74] *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *4 (Del. Super. Ct. Dec. 15, 2015) (citation omitted).

'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'"[75]  Too, "[i]f a forum selection clause validly limits a plaintiff to a single forum, that clause operates to divest a court that otherwise has jurisdiction of its status as a proper venue for plaintiff to sue."[76]  The Court will "consider if deference to the forum selection should not be afforded only: (1) if enforcement would be unreasonable and unjust under the circumstances; or (2) the forum selection clause was procured by fraudulent inducement."[77]

The Share Purchase Agreement contains a "Governing Law and Jurisdiction" provision requiring that "[a]ny disputes arising out of or in connection with this Agreement shall be finally settled by the Arbitral Tribunal operating at the Lewiatan Court of Arbitration in Warsaw."[78]  Plaintiffs, the Individual Defendants, Roboticine, and SSAR are all parties to the Share Purchase Agreement.[79]  Plaintiffs' fraud claims arise out of or are in connection with the Share Purchase Agreement. The fraud claims (Counts I-IV) all center around Defendants' alleged attempts to conceal and withhold information from Plaintiffs to divest Plaintiffs of the "true value of their interests as shareholders in Holo SA."[80]  The Share Purchase

---

[75]  *Id.* (quoting *Loveman*, 2009 WL 847655, at *2).

[76]  *Loveman*, 2009 WL 847655, at *3 (citation omitted); *see also Simon*, 2000 WL 1597890, at *6.

[77]  *Airbase Carpet Mart, Inc.*, 2015 WL 9302894, at *4 (citing *Loveman*, 2009 WL 847655, at *3).

[78]  Am. Compl., Ex. R § 7.10.2.

[79]  *See id.*, Ex. R at 1-2.

[80]  *See id.* ¶ 94.  The other fraud allegations are similarly pled.  *See id.* ¶ 84 (claiming Defendants induced Plaintiffs as it relates to, *inter alia*, "the purchase of Plaintiffs' ownership interest in Holo SA by Roboticine"), ¶ 94 (claiming Defendants induced Plaintiffs as it relates to "divesting

Agreement governed Plaintiffs' sale of their interest in Holo SA to Roboticine.[81] The fraud claims, thus, arise out of or in connection with the Share Purchase Agreement. Although Plaintiffs did not plead a breach-of-contract claim under the Share Purchase Agreement, "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship."[82] Thus, Poland is the presumptive forum for these claims unless one of the two before-mentioned exceptions is satisfied.

"An agreement is only unreasonable when its enforcement would seriously impair [p]laintiff's ability to pursue its cause of action. Mere inconvenience or additional expense is not the test of unreasonableness."[83] Plaintiffs have not demonstrated that the Share Purchase Agreement's forum selection clause would impair their ability to pursue their causes of action. They suggest only that the Share

---

Plaintiffs of the true value of their interests as shareholders in Holo SA"), ¶ 102 (same), ¶ 114 (same).

[81] *Id.* ¶ 63.

[82] *Ashall Homes Ltd. v. ROK Ent. Grp. Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) (citation omitted); *see also Simon*, 2000 WL 1597890, at *3 (citation omitted). Plaintiffs appear to acknowledge that a breach-of-contract claim would create more jurisdictional or venue-related problems if they pled one, and they believe the fraud claims are not tied to the Share Purchase Agreement because the allegedly fraudulent conduct pre-dated the execution of the Share Purchase Agreement. *See* Answering Br. at 28-29 (arguing Plaintiffs were not "required to bring a contract claim simply because Defendants would prefer to defend one" and noting Plaintiffs allege fraud "based on statements and conduct . . . that pre-date the stock sale"). But this creativity in pleading doesn't allow Plaintiffs to escape the Share Purchase Agreement's forum selection clause. *See Amgine Techs. (US), Inc. v. Miller*, 2021 WL 5564688, at *10 (Del. Ch. Nov. 29, 2021) ("[Delaware] law is clear that a party cannot escape a valid forum selection clause by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection . . . clause itself." (internal quotation marks and citation omitted)).

[83] *Loveman*, 2009 WL 847655, at *3 (citation omitted).

Purchase Agreement is governed by Polish law and if fraudulent inducement is found, the contract is invalid under Polish law.[84] Plaintiffs therefore have not argued that enforcement of the forum selection clause would be unreasonable or unjust.[85]

The second exception—whether the forum selection clause was procured by fraudulent inducement—also warrants dismissal. Plaintiffs argue the execution of the Share Purchase Agreement was procured by fraudulent inducement, but not that the *forum selection clause* was.[86]

This harkens to *Airbase Carpet Mart, Inc. v. AYA Associates, Inc.*, where the plaintiff alleged that fraudulent advertising may have induced it into entering the contract at issue.[87] This Court held that the *Airbase Carpet* forum selection clause was valid because the plaintiff did not allege "in the Complaint, nor argue against dismissal, that the *forum selection clause* was procured through fraud or fraudulent

---

[84] *See* Answering Br. at 29-30.

[85] Plaintiffs do detour momentarily to point out that Poland's arbitration infrastructure and procedures would disadvantage them because Polish arbitration is not oft used. *See id.* at 32. But this bare allegation, with a citation to a webpage, is not enough to show that enforcement of the forum selection provision is unreasonable or unjust. *See Camejo v. Angelini Pharma Inc.*, 2021 WL 141338, at *2 (Del. Super. Ct. Jan. 15, 2021) (noting that in the motion to dismiss context, the Court need not accept conclusory allegations nor accept "every strained interpretation of the allegations proposed by the plaintiff"). Moreover, Plaintiffs are sophisticated parties who negotiated the Share Purchase Agreement. *See* Am. Compl. ¶¶ 60-63. If they didn't want to be subject to Polish arbitration, they could have negotiated for a different dispute-resolution form and forum. They did not. And the Court won't rescue a sophisticated party from agreed-upon contract provisions it later finds it doesn't like. *See Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (noting in the implied covenant context that "[p]arties have a right to enter into good and bad contracts, the law enforces both"); *see also Smart Sand, Inc. v. US Well Servs. LLC*, 2021 WL 2400780, at *13 (Del. Super. Ct. June 1, 2021) ("[T]he Court 'will not disturb a bargain because, in retrospect, it appears to have been a poor one.'")

[86] *See* Answering Br. at 28-32.

[87] *Airbase Carpet Mart, Inc.*, 2015 WL 9302894, at *4.

inducement."[88]   Same here.   Plaintiffs' argument is that they were fraudulently induced into executing the Share Purchase Agreement, not that the forum selection clause itself was procured or added through fraud or fraudulent inducement.[89]

Plaintiffs go on to insist that the fraud claims do not arise out of the Share Purchase Agreement and that under Delaware law parties may bring an independent fraud claim where the fraudulent conduct occurs prior to the execution of the contract to induce Plaintiffs' signature.[90]  They look to *Levy Family Investors, LLC v. Oars + Alps LLC*[91] to no avail.  *Oars + Alps* concerned fraud and contract claims as it relates to anti-bootstrapping rules, not deference (or lack thereof) to a forum selection clause.[92]

Finally, Plaintiffs' Count V claim (unjust enrichment, unlawful taking, and conversion—which are pleaded all in one count) also arises out of and in connection with the Share Purchase Agreement.   Plaintiffs contend "Defendants unjustly enriched themselves by fraudulently inducing Plaintiffs to transfer all of their

---

[88]   *Id.* (emphasis in original).

[89]   *See Amgine Techs. (US), Inc.*, 2021 WL 5564688, at \*10 ("[Delaware] law is clear that a party cannot escape a valid forum selection clause by arguing that the underlying contract was fraudulently induced or invalid for some reason unrelated to the forum selection . . . clause itself." (internal quotation marks and citation omitted)); *Nat'l Indus. Grp. (Hldg.) v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 380 (Del. 2013) ("[A] party cannot escape a valid forum selection clause, or . . . an arbitration clause, by arguing that the *underlying contract* was invalid for a reason unrelated to the forum selection clause or arbitration clause itself . . . .  Instead, the party must show that the forum selection clause *itself* is invalid. . . . [A] party cannot make an end-run around an otherwise enforceable [f]orum [s]election [p]rovision through an argument about the enforceability of other terms in the contract." (internal quotation marks and citations omitted)).

[90]   Answering Br. at 28.

[91]   2022 WL 245543 (Del. Ch. Jan. 27, 2022).

[92]   *Id.* at \*8 (discussing anti-bootstrapping rules as not precluding a plaintiff from bringing a fraud claim).

ownership interests in Holo SA to Defendant Roboticine without just and adequate compensation."[93]   This conduct arises out of or in connection with the Share Purchase Agreement because the conduct complained of is governed by the Share Purchase Agreement, that is, Plaintiffs' sale of their Holo SA interests to Roboticine. They next charge that "[t]he transfer of Plaintiffs' interests to Defendant Robocitine . . . was an unlawful taking and conversion."[94]   These sub-parts of Count V, too, arise out of the transaction memorialized by the Share Purchase Agreement.

The Court therefore finds that the forum selection clause controls and limits Plaintiffs' contest to Poland.[95]

## V. CONCLUSION

The Share Purchase Agreement's forum selection clause governs all claims in this action because all claims arise out of or in connection with the Share Purchase Agreement.  That forum selection clause is valid.  Accordingly, the claims belong in Poland as required by its express and binding terms.

---

[93]   Am. Compl. ¶ 126.

[94]   *Id.* ¶ 132.

[95]   Two parties to this action, Surgalign and Neva, aren't parties to the Share Purchase Agreement. *See id.*, Ex. R.  So, that Agreement's forum selection clause does not directly apply to them.  But the Amended Complaint charges these two entities with aiding and abetting the Individual Defendants in committing the alleged fraud.  These two Defendants must also be dismissed. Because this Court is an improper venue for the fraud claims, it is an improper venue for the aiding and abetting portions of those claims that relate to Surgalign and Neva.  *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 215 (Del. Ch. 2006) (dismissing a conspiracy claim because the plaintiff failed to plead an underlying breach of fiduciary duty claim).  In other words, because the Court cannot decide the underlying tortious conduct, *i.e.*, fraud claim, it also cannot decide any aiding and abetting claims relating to the fraud claims.  *See PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521, at *15 (Del. Ch. Apr. 30, 2018) (dismissing an aiding and abetting claim against one defendant because the plaintiff's underlying tortious conduct claim against another defendant failed); *Riverside Fund V, L.P. v. Shyamsundar*, 2015 WL 5004924, at *5 (Del. Super. Ct. Aug. 17, 2015) (noting that there must exist an underlying fraud claim to sufficiently plead an aiding and abetting claim).

Defendants' Motion to Dismiss the Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge